# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNISHA J. MOORE, a minor, by through her Guardian ad Litem, LATASHA WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | 1:08cv00264 GSA<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

## **BACKGROUND**

Plaintiff Rodnisha J. Moore ("Rodnisha"), by and through her guardian ad litem Latasha Williams (hereinafter referred to as "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for child's supplemental security income, pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

//
//
//
//

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On July 25, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

1

## **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed her application on December 31, 2003. AR 71-74, 85. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 29-34. A hearing was held on August 2, 2007.[3] AR 195-209. The ALJ issued a decision denying benefits on August 11, 2007. AR 13-22. On December 13, 2007, the Appeals Council denied review. AR 4-6.

Hearing Testimony

ALJ Webster held a hearing on August 2, 2007, in Bakersfield, California. Rodnisha appeared with her attorney Geoffrey Hayden and her mother Latasha Williams. AR 197. Plaintiff testified that Rodnisha's date of birth was February 15, 1995, making her twelve years old at the time of the hearing. AR 199. Plaintiff testified that Rodnisha has behavioral problems that began in the third grade. AR 199. She reported that Rodnisha was to see a psychiatrist through the Kern County Medical Health clinic, but that an appointment had not yet been made. According to Plaintiff, Rodnisha saw a psychiatrist while attending elementary school. AR 200.

Rodnisha has four siblings and lives with Plaintiff, a single mother. She fights with her siblings, and is constantly in trouble at school for "outbursts" and a failure to cooperate. Plaintiff reported Rodnisha had been suspended as many as ten times that year. The suspensions were the result of "not cooperating, yelling, fighting with the kids." AR 201. Rodnisha's grades are "D's and C's." AR 202. She attends regular classes, rather than special education classes. AR 205. She has never been held back a grade, and is currently attending middle school. AR 206. Rodnisha does not finish things she starts because she forgets. She can read, but not "big words." AR 202. She threatens other children and has threatened to harm a sibling. AR 203-204. When Rodnisha becomes angry she will react by "tear[ing] up stuff." AR 204. She gets in fights with the other children at school. AR 204-205. Rodnisha has been diagnosed with

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] On December 13, 2006, and April 27, 2007, ALJ Eve Godfrey continued the hearing. In the first instance, the hearing was continued to allow Plaintiff to obtain the assistance of counsel. AR 183-189. In the second instance, the hearing was continued because counsel for Plaintiff was not properly notified of the hearing date. AR 190-194.

2

Attention Deficit Hyperactivity Disorder but does not take any prescription medications for the disorder. Plaintiff reported that she intends to see that Rodnisha is prescribed such medications, but she did not yet have an appointment scheduled. AR 203. She believes Rodnisha is getting worse. AR 205. Plaintiff testified that Rodnisha had difficulty getting "certain words out" and stutters. Plaintiff believes Rodnisha's speech problems are worsening. AR 205-206. Plaintiff believes Rodnisha misses a lot of school because she is often suspended for several days at a time. AR 206.

Medical Record

A Teacher Questionnaire dated May 1, 2004, completed by Rodnisha's third-grade teacher, Ms. Luther, provides that Rodnisha has difficulty in acquiring and using information, ranging from "no obvious problem" to "very serious problem." Regarding attending and completing tasks, Rodnisha's scores varied from "slight problem" to "very serious problem." Interacting and relating with others were consistently rated as "serious problem" or "very serious problem." Rodnisha had no difficulty moving about and manipulating objects. As for caring for herself, Rodnisha's teacher provided ratings that varied from "slight problem" to "very serious problem." AR 141-148.

On May 21, 2004, Michael G. Musacco, Ph.D., completed a psychological review of Rodnisha. AR 149-153. He reported a Verbal IQ of 81, Performance IQ of 73, and Full Scale IQ of 75. AR 151. The Full Scale IQ score falls in the Borderline range; however, Dr. Musacco cautioned that Rodnisha put forth a "poor effort" and her scores "may underestimate [her] actual intelligence." AR 151. Dr. Musacco's diagnosis of Disruptive Behavior Disorder NOS accounted for her history of significant interpersonal problems and misbehavior, resulting in suspensions from school. Rodnisha admitted that she often has an "'attitude.'" AR 152. The doctor cautioned that he did not believe Rodnisha performed to the best of her abilities and considered a diagnosis of Malingering. He could not rule out such a diagnosis. AR 153.

On June 9, 2004, a speech-language evaluation was performed by speech pathologists Sherry Belluomini and Dianne Fonssagrives of Kern Speech Pathology. AR 154-155. Following a number of tests, which reflected no abnormality in fluency, oral structures or articulation, yet

3

did evidence a delay in oral expression and listening comprehension, it was recommended that Plaintiff request a speech/hearing evaluation through Rodnisha's school for further assessment of her language and cognitive abilities. If a "true language delay" were detected, services could be provided through the school system. AR 155. The report also indicates that the results may not be an accurate reflection of Rodnisha's language skills because she often had to be redirected and was not focused. It was also noted that Rodnisha clearly was capable of more advanced vocabulary but would report that she did not know the name of images such as that associated with a "'house.'" AR 155.

On June 21, 2004, state agency medical consultant George W. Bugg, M.D., prepared a Childhood Disability Evaluation Form concluding that Rodnisha was less than markedly limited in her ability to acquire and use information, attend and complete tasks, and interact and relate with others. AR 156-161.

Luyen T. Luu, M.D. also prepared a Child Disability Evaluation Form, on October 8, 2004. Dr. Luu concluded that Rodnisha had no limitations in moving about and manipulating objects, caring for herself, or health and physical well-being. In the areas of acquiring and using information, attending and completing tasks, and interacting and relating with others, Dr. Luu found that Rodnisha suffers from less than marked impairments. AR 164-171.

On April 13, 2007, therapist Roberta Downey with Clinica Sierra Vista prepared an assessment of Rodnisha. Ms. Downey diagnosed Attention Deficit Hyperactivity Disorder, persuasive developmental disorder NOS, and a Global Assessment of Functioning score of 50. Ms. Downey noted that Rodnisha was cooperative and motivated during the interview, and that she appeared friendly and helpful, despite reports to the contrary by her mother. It was recommended that Rodnisha obtain help regarding social interaction with others, and that she be further assessed through the school system. AR 173-180.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial

4

evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

The childhood disability standard was changed by the Personal Responsibility and Work Opportunity Act of 1996. *Pub. L. No. 104-193, § 211, 110 Stat. 2105 (1996)*, amending 42 U.S.C. § 1382c(a)(3)(A*)*. The amendment provides:

> [A]n individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked or severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(I).

To apply the new statutory standard, the Commissioner now uses a three-step sequential evaluation procedure for determining whether a child's impairments result in marked and severe functional limitations and is therefore disabled. 20 C.F.R. § 416.924(b)-(d) (2001).[4] The amendment eliminated the fourth step in the disability analysis: determining whether the child had an impairment or impairments of comparable severity to that which would disable an adult. This new standard applies to new claims filed on or after August 22, 1996, and to new claims not yet finally adjudicated on that date. 42 U.S.C. § 1382c. A claim is not finally adjudicated if an

---

[4] All references are to the 2001 Code of Federal Regulations unless otherwise noted.

administrative or judicial appeal was pending on or after that date regarding a claim that has been denied in whole. *Id.; see Jamerson v. Chater*, 112 F.3d 1064, 1065 n.1 (9th Cir. 1997).

The relevant inquiry at step one is whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If not, step two requires the fact finder to determine whether the child has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.924(c). Plaintiff bears the burden of demonstrating a severe impairment. 20 C.F.R. § 416.924. If the impairment is a "slight abnormality or a combination of slight abnormalities that cause no more than a minimal functional limitation," the Commissioner will find that the child does not have a severe impairment and therefore is not disabled. 20 C.F.R. § 416.924(c).

Step three requires determining whether the severe impairment meets or equals in severity any impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If such an impairment exists, the Commissioner must find the child disabled. *Id.* If the child's impairment does not meet or medically equal any listing, then the Commissioner must determine if the limitations caused by the impairment functionally equal a listing in the Listing of Impairments. *Id.* To do so, the Commissioner will assess all of the functional limitations caused by the child's impairments in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well being. *See* 20 C.F.R. § 416.926a(a)-(b). To functionally equal a listing, the impairments must result in marked limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

Where the final decision of the Commissioner was proper under the old standard, it must be upheld under the new standard, as the new standard is more stringent. *Jamerson v. Chater*, 112 F.3d at 1068.

In this case, the ALJ found that Rodnisha: (1) has not engaged in substantial gainful activity; (2) has a learning disorder and a disruptive behavior disorder that are considered "severe" under the Social Security Act; but (3) the impairment does not meet, medically equal, or functionally equal any of the medical listings in Appendix 1, Subpart P of Regulations No. 4 and

does not result in marked or severe limitations. Thus, the ALJ found that Rodnisha was not under a disability as defined in the Social Security Act. AR 16-22.

Plaintiff contends that the ALJ's conclusion that Rodnisha's condition is not functionally equal to the Listings is erroneous because the ALJ failed to give greater weight to the statements provided by Rodnisha's teacher as the information supports a finding that Rodnisha suffers from marked limitations in two additional domains of attending and completing tasks, as well as acquiring and using information. Plaintiff further contends that the ALJ failed to properly evaluate the third party statement of Rodnisha's grandmother, Frances Williams.

## **DISCUSSION**

Step three of the sequential analysis requires determining whether the severe impairment meets or equals in severity any impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If such an impairment exists, the Commissioner must find the child disabled. *Id.* If the disease or impairments does not meet or medically equal any listing, the Commissioner must decide whether it functionally equals a listing. 20 C.F.R. § 416.926a(a). Functional equivalence to a listing is established where plaintiff has an "extreme" limitation in one domain of functioning, or "marked" limitations in two or more of the domains of functioning. 20 C.F.R. § 416.926a(a). The domains used are: acquiring and using information; attending and completing tasks; interacting and relating with others, moving about and manipulating objects; caring for one's self; and health and physical well being. 20 C.F.R. § 416.926a(b). A "marked" limitation is one that interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e). "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." *Id*.

Here, the ALJ found that Rodnisha had less than marked limitations in the areas of acquiring and using information, and attending and completing tasks. The ALJ found that Rodnisha had no limitations in her ability to move about or manipulate objects, in caring for herself, or of her health and physical well being. The ALJ did find Rodnisha markedly limited in her ability to interact or relate with others. AR 17-21.

A.  *Less Than Marked Limitations*

Plaintiff challenges the ALJ's determination that Rodnisha has less than marked limitations in the area of acquiring and using information. Plaintiff asserts that "the ALJ erred in failing to give greater weight to the statements of Rodnisha Moore's teacher." Similarly, Plaintiff challenges the ALJ's determination that Rodnisha has less than marked limitations in the area of attending and completing tasks. Plaintiff again relies upon Ms. Luther's statements.

The ALJ stated that although Rodnisha's third-grade teacher reported a "serious" problem in acquiring and using information, the medical consultants made less than marked findings in this area. The ALJ noted that Rodnisha was not attending special education classes, nor did it appear she needed such classes. Lastly, related testing in this area, performed by Dr. Musacco, was not entirely reliable. AR 18. As to the domain of attending and completing tasks, the ALJ found that although Rodnisha's teacher also reported a "serious" problem in this area, "the evidence discussed above does not support the extent alleged by the teacher." AR 19.

The ALJ's finding that Rodnisha is not markedly limited in the "acquiring and using information" domain is supported by substantial evidence in the record and was not based on legal error. Examples of difficulty in this area include an inability to understand words about space, size or time, an inability to rhyme words or the sounds in words, difficulty in recalling important things recently learned, and difficulty solving mathematics questions or computing arithmetic answers, or talking in short, simple sentences. 20 C.F.R. § 416.926a(g)(3). Dr. Musacco evaluated Rodnisha at the request of the Department and noted as follows:

> On the Spelling domain, it was noted that the claimant was unable to spell words such as "him" or "reach." On the Arithmetic domain, the claimant provided inconsistent responses; at times she was able to complete simple addition tasks, while on other occasions she provided inaccurate responses to two digit addition problems. Finally on the Reading domain, it was noted the claimant was able to read words such as "read" and "book." She was unable to read words such as "animal" or "felt." The claimant's performance on this test should be interpreted with caution due to poor effect.

AR 152. Dr. Musacco noted that Rodnisha is able to "print or write short notes or messages, but she does not use a dictionary." AR 152. It was reported to the doctor that Rodnisha cannot "tell time in five minute segments" and will not clean her room without being reminded, but that she

"is able to use the telephone for all kinds of calls without assistance, and she is able to prepare foods that require mixing and cooking." *Id*.

Consultants Bugg and Luu were in accord and concluded that Rodnisha was not markedly limited in either the acquiring and using information domain or the attending and completing task domain. AR 156-161, 164-171.

Plaintiff reliefs upon SSR 06-3p in support of her arguments. SSR 06-3p provides that when considering the opinion of a "non-medical source," such as teachers, counselors, or social workers "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." Information from "other sources" cannot establish the existence of a medically determinable impairment. Rather, there must be evidence from an "acceptable medical source" for that purpose. SSR 06-3p. Here, the ALJ did consider the report of Rodnisha's third-grade teacher; however, he was not required to give this evidence greater weight than the conclusions of medical professionals. Rodnisha's third-grade teacher is not medically trained nor can she offer medical opinions or diagnoses. Dr. Musacco's opinion alone constitutes substantial evidence, because it rests on his own independent examination of Rodnisha. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). A consultive examiner's opinion may constitute substantial evidence because it is based on examiner's independent findings and observations. *Id*. An ALJ must provide "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995) (citations omitted). The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995)). To the degree Ms. Luther's statements contradict the medical evidence in the record, the ALJ was well within his discretion to give more weight to the conclusions of

medical professionals. The ALJ's finding that the teacher's "report of a serious problem" is not supported by the record, was not erroneous.

Additionally, the court is not persuaded by Plaintiff's analysis regarding the factors to be associated with a non-medical source's statements. In part, Plaintiff incorrectly states that "the teacher taught" Rodnisha for two years. However, Plaintiff's citation to the record evidences that the teacher had known or been acquainted with Rodnisha while she attended second and third grade at College Heights elementary school. *See* AR 138 (Rodgers taught second grade; Luther taught third grade). Most notably, Plaintiff does not explain how the information provided by Ms. Luther provides insight into the severity of the impairments claimed. *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007).

The ALJ is not required to consider the statements of Rodnisha's teacher to the exclusion of other medical evidence. The ALJ is responsible for resolving conflicts in the medical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Indeed, the court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Id.*

Lastly, the ALJ expressly noted that he carefully considered the entire record, or all evidence, in making his determination. AR 13, 16. There is "more than a mere scintilla" of evidence available in the record to support the ALJ's findings and the proper legal standards were employed.

B. *Third Party Statements*

Plaintiff alleges that the ALJ failed to properly evaluate the third party statement by Rodnisha's grandmother, Frances Williams. Plaintiff is mistaken. Plaintiff's specific citations to the record regarding Ms. Williams's purported statements are at pages 123 and 126. However, a closer review of the record reveals that the statements were not given by Frances Williams. Rather, the statements were provided by Plaintiff Latasha Williams. Thus, the ALJ did not fail to consider any third party statement by Frances Williams.

A Disability Report - Appeal - Form SSA-3441 was completed on behalf of Rodnisha Moore. AR 123. At Section 1, subdivision D, the claimant is asked to "[g]ive the name of a

friend or relative that we can contact (other than your doctors) who knows about your illnesses, injuries, or conditions and can help with your claim." AR 123. Frances Williams's name and contact information appears in the space provided. *Id*. The form itself is not signed, nor is it dated. The only information provided is an address of "2109 MONTEREY ST BAKERSFIELD, CA 93305." That address corresponds the address for Rodnisha, her mother and siblings, and her grandmother. *See* AR 113-119. A careful comparison of the document that appears at AR 113-119 reveals it is identical to the document that appears at AR 123-129. The latter is merely the typed or computer-generated version of the handwritten document that precedes it. *Cf.* AR 113 at Section 2A to AR 123 at Section 2A; AR 117 at Section 7A to AR 126 at Section 7A. Plaintiff herself signed her name as the "person completing this form" on January 11, 2005. AR 119. Most notably however, nothing in the document that appears at AR 123-129 purports to provide a statement directly from Frances Williams as asserted by Plaintiff. In fact, it is clear the responses were provided by Plaintiff Latasha Williams rather than Frances Williams.

Defendant's argument assumes a third party statement of Frances Williams exists, and asserts any error was harmless. However, as indicated above, the statement relied upon by Plaintiff as that of Frances Williams is in fact Plaintiff's own statement. Therefore, Defendant's harmless error argument was not considered by the court.

The ALJ did not fail to consider the third party statements of Rodnisha's grandmother Frances Williams. In any event, the ALJ's finding is supported by substantial evidence in the record and was not based on legal error.

//
//
//
//
//
//
//
//

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of defendant and against Plaintiff.

IT IS SO ORDERED.

Dated:   **March 24, 2009**                              **/s/ Gary S. Austin**
                                                                        UNITED STATES MAGISTRATE JUDGE